### HIRAM MOORE v. HAZEN CAMPBELL ET AL.

#### Replevin Bond.    Principal and Surety.    Lien.

The Woodstock bank recovered judgment against Tarbell and Downer, the former principal and the latter surety, took out execution and put it into the hands of the plaintiff, an officer, who levied upon the property of Tarbell. This property was replevied by the defendant, C. Judgment was rendered against C. for a return of the property; a writ of return was issued but the property was not returned, but went into the hands of Tarbell. The plaintiff then brought an action against C. on his replevin bond. The bank not having received payment on the debt against Tarbell and Downer, sued and recovered on their original judgment against them, and took out execution which was paid up in full by Downer the surety, and the officer returned it satisfied. *Held*, that the debt out of which the bond grew being paid and extinguished there could be no recovery on the bond.

When a debt is paid and extinguished, though by a surety, all liens or securities created or obtained in the proceedings to enforce its collection at law, are extinguished also.

THIS was an action on a replevin bond. Judgment was rendered for the plaintiff at the January Term, Orange County Court, 1859, and the suit continued for the assessment of damages, and at the June Term, 1859, ALDIS, J., presiding, there was a trial by jury on the assessment of damages.

The jury returned a verdict for the plaintiff for the sum of $804.00, damages and costs,—exceptions by the defendants.

The case is sufficiently stated in the opinion of the court.

*Converse & French*, for the defendants.

It is well settled that the payment of a debt by a person liable to its payment, discharges the debt against all the debtors. *Hammatt* v. *Wyman et al.*, 9 Mass. 138; *Brackett* v. *Winslow et al.*, 17 *ib*. 153; *Sherman* v. *Boyce*, 15 John. 443. An officer has no legal right or authority to maintain an action for property attached, unless he is liable therefor to the *creditor* or the *debtor*. *Collins* v. *Smith*, 16 Vt. 9; *Goodrich* v. *Church*, 20 Vt. 187. When a debt has been kept on foot for the benefit of the surety after the creditor has been satisfied, the debt has invariably been assigned, usually to a third person for the benefit of the surety, and not discharged. *Ætna Ins. Co.* v *Wires et al.*, 28 Vt. 93; *Low* v. *Blodgett et al.*, 1 Foster 121; *McIntyre* v. *Miller*, 13 M. & Welsby 724.

24

*Washburn & Marsh*, for the plaintiff.

A surety, who pays the debt to the creditor is entitled to be subrogated to all securities held by the creditor, and a lien by attachment is such a security. *Edgerly* v. *Emerson*, 3 Foster 555. It has been held in this state, in a case where the payment was made by the hand of another, that the surety became subrogated to the right created by the attachment, and might pursue those rights to satisfaction, in that suit, in the name of the creditor; and that for that purpose the judgment was not extinguished. *Ætna Ins. Co.* v. *Wires et al.*, 28 Vt. 93; *Bradley* v *French*, Sup. Ct. Windsor Co. never reported. And if the payment be made directly by the surety there can be no reason unless merely formal, for giving it any greater effect. The substantial object to be obtained is the protection of the surety. For this purpose the court will keep the judgment on foot, after it has been legally extinguished.

The whole is an exercise of equitable power by the court of law, and the same power exists and should be exercised whether the judgment be paid directly by the surety or by the hand of another, when the object to be obtained is the same. 5 U. S. Dig. p. 815 pl. 52, 55; 15 *ib.* p. 513 pl. 10, 11, 12; 2 Am. Lead. Cases 272, 275.

But the right of the surety, in this case, to the avails of the property attached, became a vested and absolute right, independant of the creditor, by the judgment for the return of the property in the writ of replevin, and the return of the writ of return unsatisfied.

PIERPOINT, J. It appears from the exceptions that in 1853, the Woodstock Bank recovered a judgment against Daniel Tarbell and Solomon Downer; that in the debt on which that judgment was obtained, Tarbell was the principal and Downer his surity; that in May, 1854, the bank took out an execution on that judgment, and the same was put into the hands of the plaintiff, Moore, as an officer to collect. This execution, by the direction, and for the benefit of said Downer, whom the bank permitted to control the execution for the purpose, was levied upon

the property of said Tarbell. Campbell, one of the defendants, claiming to be the owner of the property so levied upon by the plaintiff, caused the same to be replevied, and as a part of that proceeding, the bond now in question was executed. A protracted litigation ensued in the replevin suit, resulting in a judgment against Campbell for a return of the property; a writ of return was issued, but the property was not returned. Thereupon this suit was brought upon the replevin bond on the 10th day of June, 1856.

The bank not having received payment upon the debt, brought a suit upon the original judgment against Tarbell and Downer, and a recovery was had therein at the December Term of the Windsor County Court in 1857, for the whole amount of their demand. On this judgment the bank took out an execution, put it into the hands of an officer to collect, and caused it to be satisfied, in part by a levy upon the real estate of said Downer, and the balance was paid by Downer to the officer, who received the same, discharged the execution in full, and returned it satisfied. It is conceded that after the property was replevied, it went into the hands of Tarbell and for his benefit, so that no claim to recover here, is based upon the liability of the plaintiff over to him, but the simple question presented is, as to the effect of the payment of the debt by Downer, and the full discharge of the claim by the bank, upon the right of the plaintiff to recover upon this bond for the benefit of Downer.

In discussing this question it must be borne in mind that this bond was based upon, grew out of, and its legal existence and vitality must depend upon the debt to the Woodstock Bank, and the proceedings that were instituted by the bank to enforce its collection and the liabilities that were created thereby. It has no separate and independent existence, and nothing else upon which it can stand. In the course of such proceedings the property of Tarbell was attached by the plaintiff and taken into his possession; it was replevied and this bond was executed, conditioned for its return, in case a return was awarded. It became a money obligation only on a failure to return, and then stood in the hands of the plaintiff as a representation of the property and his

right to enforce the bond and control the proceeds, would seem to be the same, as they would have been in respect to the property itself, if that had remained in his hands, or had been returned. His rights and liabilities are much the same as those of an officer who has attached property and taken a receipt for it. In that case the right of the officer to enforce the receipt, depends upon his liability over to the creditor, or the debtor, if the debtor takes the property to his own use, and the suit is terminated by payment, or in any other way than by a judgment for the plaintiff. The receiptor is discharged and the officer cannot maintain an action on the receipt, for the reason that his liability over either to the creditor or the debtor is at an end. So in this case to entitle the plaintiff to recover on the bond for the value of the property attached, it must appear that he is liable to account to some one for that property. Tarbell having had the property, there is no liability to account to him. The bank having received the debt and discharged the execution can have no claim upon the plaintiff for the property attached.

Does the fact that Downer paid the debt to the bank give him the right to call upon the plaintiff to account to him for this property or the avails of it? To accomplish such a result it is necessary that the original debt to the bank should be kept in existence in some form, and to such an extent as that it may constitute a basis on which to sustain the lien created by the original attachment, for that lien is the whole foundation of this bond and the plaintiff's right to recover upon it, as between him and the creditor; if that lien is extinguished the plaintiff cannot recover, as there is nothing else on which to base his liability or sustain his right.

Can it be said that this debt has now any legal existence for any purpose, either as against Downer or Tarbell? It is true Tarbell has not paid the debt, but a payment by either cancels the debt to the bank, and discharges both, and Tarbell is as effectually discharged from all obligation to the bank, as he would have been if he had paid the debt himself. The money was paid by Downer as a payment of the debt; it was received as such and the debt discharged. There was no agreement or under-

Moore *v*. Campbell et al.

standing, between the bank and Downer, that the debt was to be assigned, transferred, or kept on foot for his benefit. On the payment of the money Tarbell became the debtor of Downer to the amount paid, and the very act that made him Downer's debtor was the payment of the debt by Downer, and his causing him to be discharged from all obligation to the bank. The fact that Tarbell has thus become the debtor of Downer, cannot give Downer any lien upon the property, or the avails of it through the bond. The very act that makes Tarbell Downer's debtor, as effectually discharges the bond, as it does the debt to the bank. To hold otherwise would be in direct violation of well settled and familiar principles of law. Indeed it is conceded in the argument on the part of the plaintiff, that to sustain the plaintiff's claim the court must take a step beyond any judicial footprint that can be found; but it is urged that the courts of this state, have already approached so near the requisite point, that the equity of this case should impel them to take that step, and we are referred to the case of *Ætna Ins. Co.* v. *Wires et al.*, and *Bradley* v. *French*, Windsor Co., not reported. In both of these cases the surety procured a third party to purchase the debt and take an assignment, and thus keep the debt on foot to enable him to get the benefit of the security. In the latter case it appeared that the surety furnished the money to the third party with which to make the purchase. The court held in both cases that the transaction was a purchase and not a payment; the parties so understood and intended it; but if it had been a payment in form and in fact, and so intended by the parties at the time, as in this case, there would probably have been a different result. In the case of *Edgerly* v. *Emerson*, 3 Foster, 555, the court went still further and held that the surety might himself buy in the debt and take a transfer of it to himself, and thus keep it on foot for his own security; but the court put the case expressly upon the ground that it was not a payment, but a purchase, and so understood and intended by the parties. Here the transaction was a payment and nothing else, so intended and understood, by the parties, and nothing to indicate that they intended any thing different, or that would warrant such a presumption.

Treating the debt as paid and extinguished, all liens or securities created or obtained in the proceedings to enforce its collection at law, are extinguished also. They cannot exist without the debt to uphold them.

As this suit was commenced before the debt to the bank was paid, it is conceded that the plaintiff is entitled to nominal damages, but as the case was tried by jury, we can render no judgment therefor here.

Judgment of the county court reversed and case remanded.