PETER H. MARTIN *v.* ABNER RUTLEDGE.

October Term, 1919

Present:  WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 11, 1920.

*Tenancy in Common—Rights of Cotenant in Common Property —Sale by One Cotenant—Ratification of Unauthorized Act —Effect of Ratification—Owner Ratifying Unauthorized Sale May Sue for Price—Where Parties Expressed No Dissatisfaction Trial Court's Action Not Reviewed—Evidence of Quality—Testimony to Explain Adverse Evidence— Judgment Rendered for Correct Amount Without Reversing Case.*

1.  One cotenant of personal property may deal with his interest as with any other of his property, and, with the consent of his co-owners, can sell the interest of all in the property and give good title thereto.

2.  A cotenant who does not consent to a sale of the common property may, on learning thereof, ratify it, especially where the vendee knew at the time he bought that the seller was not the sole owner of the property, and must necessarily be acting for his co-owner, as to his interest.

3. One of the most frequent and unequivocal methods of showing a ratification of unauthorized acts of an agent is the bringing of an action or the basing of a defence thereon.

4.. The ratification of an agent's unauthorized act relates back and supplies the original authority to do the act, or is equivalent to prior authority.

5. If a party for whom an act is done, or contract made, elects to ratify such act or contract, the other party is not a tort-feasor; it is only when he declines to ratify that he can proceed tort-wise.

6. Where plaintiff's cotenant sold hay owned by them in common to the defendant, plaintiff ratified the sale by bringing suit for his interest in the hay, and he could maintain an action of assumpsit for goods sold and delivered.

7. Where plaintiff's cotenant sold two crops of hay, in one crop of which the cotenant had no interest, nor authority to sell it, and its sale was not ratified by the plaintiff, but the court treated the two crops as standing alike, and, in effect, directed a verdict for the plaintiff for one-half the value of all the hay, and neither party expressed any dissatisfaction with such action of the court, the Supreme Court will not review the trial court's action.

8. Evidence that the following year no grass was cut on the farm where one crop was harvested was not admissible as bearing on the quality of the crop harvested, without showing that the two crops were substantially the same in quality.

9. The defendant having testified that he purchased the hay for $150, and the seller having testified that no price was agreed upon, the latter's testimony that later in the year he sold the defendant another lot of hay for $150 was admissible to meet and explain defendant's testimony.

10. Where the error only affects the amount of recovery, and the correct amount is readily ascertainable, the case will not be reversed, but judgment will be rendered for the proper amount.

ACTION OF CONTRACT to recover the value of hay. Plea, the general issue. Trial by jury at the April Term, 1919, Essex County, *Stanton*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

   *Porter, Witters & Harvey* for the defendant.

   *Dunnet, Shields & Conant* for the plaintiff.

SLACK, J.   This is an action of general assumpsit to recover the value of hay cut by the plaintiff in the summers of 1915 and 1916 on a farm then owned by him.

It appears that the plaintiff and one Harrison were tenants in common of the hay cut in 1916 and that Harrison conveyed his interest therein to W. H. Worthen and F. D. and D. T. Gilman.

The defendant claims, and the plaintiff does not dispute, that F. D. Gilman sold the hay cut in 1916 and a small quantity cut the year previous, it being all the hay on the plaintiff's farm, to the defendant.   The defendant drew the hay to his farm and fed it to his stock, but has not paid any one for it.   The plaintiff did not know of the sale to the defendant until after the hay had been fed out.

At the close of all the evidence, the defendant moved for a directed verdict on the grounds, in substance:   (1) That no basis appeared for an action of assumpsit, that on the facts disclosed no action could be maintained except trover, and (2) that on the undisputed evidence Harrison was a tenant in common of the hay, and that he sold it to the Gilman Brothers, and that thereby title in full passed to them, and therefore the plaintiff could not maintain any action for it.

At the time of the sale to the defendant, Worthen and the Gilmans were co-owners, although not equal owners, with the plaintiff.

[1]   Either had the right to sell, pledge, mortgage, bequeath, or otherwise deal with his interest in the hay as with any other property he possessed.   With the consent of his co-owners, either could sell the interests of all in the property and give good title thereto.   Freeman on Cotenancy and Partition (2nd ed.) §§ 183, 188.

In *Chase* v. *Soules*, 76 Vt. 353, 57 Atl. 754, the Court recognizes the right of one cotenant to sell the entire property, if done with the consent of his cotenant.

[2]   So, too, a cotenant who does not consent to a sale of the common property may, on learning thereof, ratify the same, especially where, as in the instant case, the vendee knew at the time of his purchase that the party, with whom he dealt, was not

the sole owner of the property, and must necessarily be acting for his co-owners, as to their interest.

Mr. Freeman, in his work above cited, at section 188, speaking of a deed of real estate by one cotenant, says: "A deed of a specific parcel of land by one cotenant is not binding on the others, nor can their rights be, to any extent, prejudiced by it. Such a conveyance, however, is not void, but voidable only. It may therefore be approved and ratified by the cotenants, and thereby be made to operate as a conveyance in severalty." *Dall* v. *Brown*, 5 Cush. (Mass.) 289. See also, *Oviatt* v. *Sage*, 7 Conn. 95; *Putnam* v. *Wise*, 1 Hill (N. Y.) 234, 27 A. D. 309.

[3] One of the most frequent and unequivocal methods of showing a ratification of unauthorized acts of an agent is the bringing an action or basing a defence thereon. *Blanchard* v. *Waite*, 28 Me. 51, 48 A. D. 474; *Finney* v. *Fairhaven Ins. Co.*, 5 Met. (Mass.) 192, 38 A. D. 397; *McLeod* v. *Despain*, 49 Or. 536 90 Pac. 492, 124 A. S. R. 1066; 21 R. C. L. 928. And no reason is apparent why the same rule is not applicable in the case before us.

[4] Such ratification relates back and supplies the original authority to do the act, or, put in another way, is equivalent to prior authority. *Oviatt* v. *Sage, supra; Despatch Line, etc.*, v. *Bellamy Mfg. Co.*, 12 N. H. 205, 37 A. D. 203, 213; *Clealand* v. *Walker*, 11 Ala. 1058, 46 A. D. 238; 21 R. C. L. 919.

[5] Therefore, if a party for whom an act is done, or contract made, elects to ratify such act or contract, the other party is not a tort-feasor. It is only when a party for whom an act is done, or contract made, declines to ratify that he can proceed tortwise.

[6] Gilman could recover of the defendant for his interest in the hay in an action of assumpsit for goods sold and delivered, and when the plaintiff ratified the sale, as he did by bringing this suit, we see no reason why he is not entitled to the same remedy. The motion was properly denied.

[7] Very likely the plaintiff's recovery, under the facts shown, should have been limited to his interest in the hay cut in 1916, had that question been raised on the trial. Gilman had no interest in the hay cut the year before, and it did not appear that he had authority to sell it, or that in making the sale he acted in such a manner that the plaintiff could have ratified the sale. *Virginia, etc., Coal Co.* v. *Lambert*, 107 Va. 368, 51 S. E. 561,

122 A. S. R. 860, 13 Ann. Cas. 277; *Hamlin* v. *Sears*, 82 N. Y. 327; *Garvey* v. *Jarvis*, 46 N. Y. 310, 7 A. R. 335; 2 C. J. 478; 21 R. C. L. 923. But this question was not raised. While both parties introduced evidence to show how much of the 1915 crop the defendant had, the court in its charge did not refer to this matter, but treated the two crops as standing alike and, in effect, directed a verdict for the plaintiff for one-half of what was found to be the value of all the hay, and submitted to the jury his right to recover for the other half.

Counsel for neither party expressed any dissatisfaction with the action of the court in so treating all of the hay, and there is therefore no occasion for us to consider the matter.

We hold that the plaintiff is entitled to recover in this action one-half the value of all the hay the defendant purchased from Gilman.

[8] On cross-examination of the plaintiff, the defendant offered to show that the grass that grew on the farm where the hay in controversy was harvested, in 1917, was not cut, as bearing on the quality of the hay cut in 1916. This evidence, without showing that the crops the two seasons were the same or substantially the same, in quality, was too remote and conjectural to be admissible and was properly excluded.

[9] The defendant testified that he purchased the hay of Gilman for a lump sum of one hundred and fifty dollars. Gilman testified that no price was agreed upon. Gilman was then permitted to testify, subject to the defendant's exception, that later in the year he sold the defendant another lot of hay for one hundred and fifty dollars. This was admissible to meet and explain the evidence of the defendant by showing that he might have confused the two transactions.

The remaining exceptions raise questions that relate either to the right of the plaintiff to maintain this action or to the extent of recovery that may be had, and, in view of our holding before stated, need not be considered.

[10] The verdict was for two hundred and seventy-two dollars, which the jury must have found to be the entire value of the hay. This the plaintiff is not entitled to. The judgment therefore must be reversed; but it is not necessary to remand the case, as the error only affects the amount of recovery and the correct amount is readily ascertainable. *Bates* v. *German Commercial Accident Co.*, 87 Vt. 128, 88 Atl. 532, Ann. Cas. 1916 C,

447; *Moore* v. *Duke et al.,* 84 Vt. 401, 80 Atl. 194; *Ellis' Admr.*
v. *Durkee,* 79 Vt. 341, 65 Atl. 94; *Miltimore* v. *Bottom,* 66 Vt.
168, 28 Atl. 872.

*Judgment reversed, and judgment rendered for the plain-*
*tiff to recover $136, with interest thereon from April 29, 1919,*
*the date of the verdict, with costs in the county court, less the*
*defendant's costs in this Court.*